# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

---

**MASON WOODS**,

        *an individual*

        Plaintiff,                  Case No.: 1:25-cv-1381

v.                                     Hon.

**CITY OF EAST LANSING**, *a municipal corporation,*
**OFFICER ANDREW LYON**, *in his individual*
*and official capacities*, and **CHIEF JENNIFER BROWN**,
*in her individual and official capacities,*

        Defendants.

---

## COMPLAINT AND JURY DEMAND

    NOW COMES Plaintiff, Mason Woods, by and through his attorneys, NOVA LAW, PLC, and for his complaint hereby states as follows:

## INTRODUCTION

    1.    Plaintiff Mason Woods never thought that the city he grew up in would one day turn on him.

    2.    On August 24, 2025, Woods was pepper sprayed, arrested, forced to be treated at a local hospital for intoxication, charged with a crime he did not commit, and falsely labeled a criminal to the public, all because, in Defendant Chief Jennifer

Brown's public words, local resident Woods was a part of "a disproportionate number of minorities" who came to East Lansing to "commit crimes."

3.    Woods, at just 22-years-old, will have to spend the rest of his life feeling the pain of that day and with the knowledge that the city he grew up in, the city that he loves, views him as nothing more than a minority and a criminal.

4.    This is a civil rights action in which Plaintiff, Mason Woods, seeks relief and all damages that flow from Defendants' violations of Wood's rights, as secured by the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. §1983.

5.    As part of the aforementioned relief, Plaintiff Mason Woods seeks damages that flow from Defendants' violations of Wood's rights, as secured by Article I, § 11 of the Michigan Constitution, as well as any and all reputational damages recoverable under MCL §600.2911 and common law torts, attorney fees and costs, economic, non-economic, punitive damages and any further relief the Court deems Proper.

## JURISDICTION AND VENUE

6.    Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, and jurisdiction is therefore proper pursuant to 28 U.S.C. § 1331.

7.     This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 for Plaintiff's defamation claims and common law claims against Defendants.

8.     Venue is proper in the Western District of Michigan, Southern Division, under 28 U.S.C. § 1391. The parties reside, or at the time the events took place, resided in this judicial district, and the events giving rise to Plaintiff's claims also occurred in this judicial district.

## PARTIES

9.     Plaintiff MASON WOODS is a 22-year-old black male and lifelong resident of East Lansing, Michigan.

10.     Defendant ANDREW LYON is a white police officer and employee of the East Lansing Police Department at all relevant times and is sued in his individual and official capacity.

11.     Defendant JENNIFER BROWN was the Police Chief for the East Lansing Police Department at all relevant times and is sued in her individual and official capacity

12.     Defendant CITY OF EAST LANSING is a municipal corporation organized under the laws of the State of Michigan, with its principal offices located in East Lansing, Michigan.

## FACTUAL ALLEGATIONS

13.    Mason Woods is a resident of East Lansing who went out on the night of August 24, 2025, to participate in Michigan State University's welcome-week celebrations to kick off a new school year.

14.    At the above date and time, Mason Woods ("Woods") along with his friends, including his best friend Lonnie Smith ("Smith"), were enjoying a casual night out in downtown East Lansing.

15.    At or around 1:30 A.M., Woods was waiting at the front of a crowded line outside of a local East Lansing restaurant, Dave's Hot Chicken, located off of Albert Avenue, while Smith was waiting across the street with other friends.

16.    As Woods was in line and Smith was across the street talking with friends, nearly a dozen East Lansing police officers occupied the same block of East Lansing, hovering over the students as they walked by.

17.    While in line and in a tight, crowded doorway in front of the restaurant, an argument arose between Woods and several other individuals in line.  Woods did not personally know the individuals who were harassing him as he waited for the bouncer of Dave's Hot Chicken to allow him inside.

18.    Woods continued to try to avoid confrontation with these individuals by going into the restaurant, until one of them physically grappled him to pull him back outside. This triggered a more physical reaction by Woods to avoid being man-handled by at least three other individuals who were largely strangers to him.

19.     Smith was completely sober and friendly with all of the parties involved and crossed the street to deescalate the situation.  He successfully got between the parties and began restraining Woods and removing him from the situation. With the help of other individuals in containing Woods, and the misunderstanding that led to the argument slowly coming to light, it was clear to everyone involved that the situation was deescalating and that Woods was calming down, agreeing to leave with his friends.

20.     Nevertheless, at the above time and place, three East Lansing Police Officers, including Defendant Officer Andrew Lyon ("Officer Lyon"), who are employees of Defendant City of East Lansing, and acting in the course of their employment, were standing less than fifty feet away from the restaurant entrance and decided to swarm on the crowd.

21.     Officer Jacey Kingsbury was the first to enter the crowd and make it to Woods, with Officer Logan Wainman close behind. As they approached, Officer Kingsbury said "police," but the commotion of the crowd and the noise from the busy street drowned out the comment. The individuals present were unaware that police intervention was occurring, including Woods.

22.     Having made it into the crowd in seconds, both officers observed an unidentified individual restraining Woods from the back while Smith was restraining him from the front. Officer Kingsbury grabbed ahold of Woods's right arm while

Officer Wainman grabbed Woods's left arm. In doing so, Woods became completely contained, with four individuals now restraining him on all sides.

23.    At this point, Woods was unable to resist in any meaningful way and his fate lay solely in the hands of the restraining officers.

24.    With Woods restrained, Officer Kingsbury says, "police, stop." However, as Officer Kingsbury is giving this first command to "stop," Defendant Officer Lyon emerges from the back of the crowd. Then, mere seconds into approaching the crowd, without any verbal warning, Defendant Officer Lyon unholstered his city issued OC Pepper spray, reached over Officer Kingsbury's right shoulder, aimed it within 5 inches of Woods and Smith's face, and sprayed Smith directly in his eye. Defendant Officer Lyon then turned the spray directly into Woods's face at a similar distance and unleashed it upon the entire crowd.

25.    Woods, who was completely unaware that police intervention was occurring until being hit directly in the eyes with the chemical agent, was left blinded and immobilized by the pain. The crowd dispersed with nearly a dozen other individuals including the officers, being impacted by the chemical spray.

26.    Officer Kingsbury and Officer Wainman took Woods away, who was desperately rubbing the chemical agent out of his eyes.

27.    The entire interaction, from officers first entering the crowd to Woods and Smith being pepper sprayed, lasted less than 8 seconds.

28.    The time between Defendant Officer Lyon entering the crowd and spraying Woods was less than 5 seconds.

29.    The time between Officer Kingsbury's first command to "stop" and Defendant Officer Lyon's decision to spray Woods was less than 3 seconds.

30.    As Woods was being handcuffed and searched, he expressed confusion and anger at his treatment, begging Officer Kingsbury for assistance wiping his eyes. Officer Kingsbury never renders any aid.

31.    Instead, when Woods struggles to comply due to the pain, she bellows into the back of the squad car ordering him to get in the back.  After slamming the door, she shouts **"how f***ing hard is that."**

32.    While Woods sits in the back of the police cruiser, another officer reflects to Kingsbury that she received "no warning" before she was also hit by the OC spray.

33.    As individuals are trying to explain to Defendant Officer Lyon that spraying Smith and Woods was a mistake, footage from the scene shows multiple individuals, including police officers, still suffering from the lasting impacts of the pepper spray. An officer is seen wiping her eyes and another young woman, who was standing a couple feet away from Woods when the pepper spray was unleashed, is seen sitting up against the wall crying while her friend tries to comfort her.

34.    The crying young woman and her friend were forced to move once Defendant Officer Lyon pushed Smith up against the wall where the girls were recovering.

35.    Defendant East Lansing Chief of Police Brown was present at the scene, overseeing everything the officers were doing and supervising their conduct.

36.    While Smith was handcuffed and pushed against the wall, Defendant Officer Lyon continued to try and justify his use of force against Smith and Woods by telling Smith that he was "surrounded by police" and, since "none of you guys stopped, **everyone got sprayed**."

37.    Shortly thereafter, officer Kingsbury took Woods to the East Lansing jail.

38.    She sits the functionally blinded Woods while handcuffed on a chair, offers to wipe his eyes with a dry paper towel (which Woods refuses) and waits for paramedics to come render basic aid of wiping his eyes.  It is nearly 20 minutes from exposure until Woods is given any treatment for his eyes.

39.    Woods is thrown into a cell and promptly left to sober up for nearly two hours.  Woods shows no signs of improvement, becoming unresponsive.  It is unclear whether any personnel even bothered to check on him in the nearly 2 hours he spent in the jail cell.

40.     Eventually, an unconscious Woods is physically lifted by paramedics and brought to the local hospital.

41.     Woods is subsequently charged with disorderly conduct and fighting under City of East Lansing Ordinance 26-52(9).

42.     Three weeks later, on September 19, 2025, the East Lansing police department gained access and reviewed video footage of the August 24th incident captured by the restaurant, Dave's Hot Chicken.

43.     This footage clearly revealed what everybody at the scene already knew, no fight ever happened. The footage proves that Woods was not fighting, was not being disorderly, and if anything was about to become the victim of an assault. It also reveals the excessiveness and unreasonableness of Defendant Officer Lyon's decision to deploy chemical spray directly into Wood's face without having assessed the situation.

44.     Nevertheless, on September 26, 2025, Defendant City of East Lansing published a press release saying Woods was engaged in a "Fight outside Dave's Hot Chicken" even though the footage from the restaurant wholly contradicts these statements. The press release stated that, after "multiple loud verbal commands…Smith and Woods continued to ignore them and actively engaged in physical altercations."

45.    The Defendant City of East Lansing published this completely false "report" knowing that it was contradicted by the video of what happened. Days later, Defendant Chief Brown made a public statement regarding the arrest of Woods, saying "[w]e have a very transient population, and over the last month, starting with Welcome Weekend, we have had a ***disproportionate number of minorities*** come into the community and commit crimes, and as police officers we are simply responding to those crimes." (emphasis added).

46.    On October 17, 2025, all criminal charges against Woods were dropped.

47.    As a direct and proximate cause of the unlawful activities described in this complaint, Plaintiff has suffered personal and reputational damages, all past, present, and future.

## COUNT I: Fourth Amendment, 42 U.S.C. § 1983
### Excessive Force

48.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

49.    Section 1 of the Civil Rights Act of 1871, codified as 42 U.S.C. § 1983, establishes a federal cause of action for constitutional violations inflicted by state actors.

50.    Defendant Officer Andrew Lyon, acting under color of law, deprived the Plaintiff of his rights and privileges conferred by the Fourth and Fourteenth Amendments to the United States Constitution.

51.    Defendant Officer Andrew Lyon intentionally used excessive and unreasonable force against Woods.

52.    Defendant Officer Andrew Lyon violated Plaintiffs clearly established and federally protected rights as set forth under the United States Constitution and the Amendments thereto, including but not limited to, the Fourth Amendment of the United States Constitution to be free from unreasonable searches and seizures, when he employed unnecessary and unreasonable excessive force, which resulted in significant injuries to Plaintiff.

53.    The force Defendant used was unreasonable in light of the facts and circumstances.

54.    As a proximate result of violation and/or depreciation of Plaintiff's constitutional rights by Defendant Officer Lyon, Plaintiff has suffered damages.

WHEREFORE, Plaintiff requests judgment against this Defendant for compensatory, exemplary, and punitive damages in an amount as Plaintiff shows himself to be entitled.

### COUNT II: Fourth Amendment, 42 U.S.C. § 1983
### False Arrest

55.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

56.    Defendants arrested Woods without probable cause.

57.    Defendants acted under color of law when they arrested Woods without probable cause.

58.    The actions of Defendants described herein violated the rights of Woods to be free from unlawful seizures as guaranteed by the Fourth Amendment of the United States Constitution

WHEREFORE, Plaintiff requests judgment against this Defendant for compensatory, exemplary, and punitive damages in an amount as Plaintiff shows himself to be entitled.

### COUNT III: Fourth Amendment, 42 U.S.C. § 1983
### Excessive Detention

59.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

60.    Defendants arrested Woods without an arrest warrant.

61.    Defendants unreasonably delayed transporting Woods to the hospital even after displaying a visible need for urgent medical attention and lying motionless on the floor of his cell for hours.

62.    Defendants acted under the color of law when they unreasonably delayed medical transport for Woods in violation of East Lansing policy.

63.    The actions of Defendants described herein violated the rights of Woods to be free from unreasonable seizures guaranteed by the Fourth Amendment of the United States.

WHEREFORE, Plaintiff requests judgment against this Defendant for compensatory, exemplary, and punitive damages in an amount as Plaintiff shows himself to be entitled.

## COUNT IV: *MONELL* CLAIM – 42 U.S.C. § 1983
### (Against Defendant City of East Lansing)

64.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

65.    At all times relevant, Defendant City of East Lansing was responsible for the hiring, training, supervision, discipline, and conduct of its police officers, including Defendant Officer Andrew Lyon.

66.    The City, through its policymakers including Defendant Chief of Police Jennifer Brown maintained and enforced customs, practices, and policies that directly caused the deprivation of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

67.    Specifically, the City of East Lansing created and maintained policies, practices, and customs that:

      (a) Encouraged and tolerated the use of excessive and disproportionate force, particularly against individuals of color and members of minority communities;

(b) Failed to properly train, supervise, and discipline officers regarding the appropriate use of force and the prohibition against racial bias in policing;

(c) Failed to collect, analyze, or act upon data and citizen complaints indicating racially disparate use of force.

68.    These policies and customs were not isolated occurrences but were widespread, persistent, and well known to City policy makers, who nevertheless failed to take reasonable steps to correct them.

69.    These policies and customs were present on the night of August 24, 2025, when Plaintiff was viciously pepper sprayed by Defendant's police officer.

70.    The policies and customs present on the night of August 24, 2025, were being overseen and endorsed by Defendant Chief of Police Jennifer Brown, who was present during the wrongful spraying and arrest of Plaintiff.

71.    Upon information and belief, Defendant Chief of Police Brown stated to the East Lansing Independent Police Oversight Commission ("ELIPOC") that her officers, especially Defendant Officer Andrew Lyon, did nothing wrong that night and acted consistently with policies and customs of the East Lansing Police Department.

72.    As a direct and proximate result of these policies, practices, and customs, Defendant Officer Andrew Lyon believed that he could act with impunity, including by using unreasonable and excessive force against Plaintiff and others

similarly situated, particularly individuals who were considered a part of a class of "a disproportionate number of minorities."

73.    The City of East Lansing's deliberate indifference to the foreseeable consequences of its policies and customs was the moving force behind the violation of Plaintiff's constitutional rights as guaranteed by the United States Constitution.

74.    As a direct and proximate result of the City of East Lansing's unconstitutional policies, customs, and practices, Plaintiff suffered violations of his rights under the Fourth and Fourteenth Amendments, as well as physical injury, emotional distress, humiliation, and other damages.

WHEREFORE, Plaintiff requests judgment against this Defendant for compensatory, exemplary, and punitive damages in an amount in excess of $75,000 such as Plaintiff shows himself to be entitled.

## COUNT V: Article I, Section 11 of the Michigan Constitution

75.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

76.    Defendants unreasonably and unlawfully arrested, detained, searched, and used force against Woods causing injury.

77.    The actions of the defendants described herein violated the rights of Woods to be free from unreasonable searches and seizures as guaranteed by Article I, Section 11 of the Michigan Constitution.

WHEREFORE, Plaintiff requests judgment against this Defendant for compensatory, exemplary, and punitive damages in an amount in excess of $75,000 such as Plaintiff shows himself to be entitled.

## <u>COUNT VI – Libel</u>
### (As to Defendants' City of East Lansing and Chief Brown)

78.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

79.    On September 26, 2025, Defendant City of East Lansing published false statements through a press release to statewide news outlets stating that Plaintiff, Mason Woods, was fighting on the night of August 24, 2025.

80.    Defendant City of East Lansing published multiple false and defamatory statements through their press release, including statements like:

a.  The press release was titled "Multiple Arrests, Charges Made After Welcome Weekend *fight* Near Downtown East Lansing Restaurant."

b.  "In the wake of multiple arrests and criminal charges after a Welcome Weekend *fight* outside of a downtown East Lansing restaurant…"

c.  "As a result of the *fight* outside Dave's Hot Chicken…ELPD arrested the following men…"

d.  "Mason Woods, 22, of East Lansing, was charged with disturbing the public peace by *fighting* in a public space and resisting or obstructing a police officer in the performance of lawful duties."

e.  "The video footage was released today after the ELPD decided to end its investigation into the *fight*."

    f. "Several ELPD officers responded to a crowd where they observed *physical violence* occurring between Smith and Woods."

    g. "Despite…repeated lawful orders, Smith and Woods continued to ignore them and actively engage in *physical altercations*."

    h. "In response to the *violent* commotion, an officer deployed Oleoresin Capsicum (OC) spray, a nonlethal tool designed to deescalate the disorder and halt further *fighting*."

81.    All of the above statements are false. Defendant City of East Lansing knowingly, recklessly, intentionally, and maliciously published these false statements knowing the statements were untrue based on their own investigation. Defendant City of East Lansing published these false statements with the intention to maliciously demean the reputation of Plaintiff, Mason Woods.

82.    Defendant City of East Lansing's published press release goes on to further publish false statements in a section titled "**Statement from ELPD Chief Jennifer Brown:**"

    a. "Our officers have been doing their jobs to prevent assault, stop *fights*, safely disperse large crowds and respond to other emergencies…"

    b. "We continue working closely with prosecutors to evaluate evidence and consider charges against additional individuals who participated in *violence* that night…"

    c. "We will continue to have a strong presence downtown to deter *actions* that would *endanger lives*."

83.    These additional published Statements made directly by Defendant Chief Brown, falsely suggest that Plaintiff was an individual who engaged in fights, violence, and action that endanger lives."

84.    These statements were published by Defendants after "The investigation into this incident [was] complete."  Upon information and belief, this press release was reviewed and approved by the City Attorney for the City of East Lansing prior to publication.

85.    Upon information and belief, Defendants' knowingly, recklessly, maliciously, and intentionally published these false statements while in possession of the Dave's Hot Chicken video, which clearly illustrated the Plaintiff did not engage in any fight or violence.

86.    Upon information and belief, it was reasonably foreseeable and intended that Defendants' publication would be republished by news outlets across the city and across the state of Michigan.

87.    As a direct and proximate cause of Defendants' libel, Plaintiff Mason Woods has suffered the following damages

    a.  Pain and suffering, past, present and future;

    b.  Severe emotional distress;

    c.  Humiliation, embarrassment and mental anguish.

d.  Reputational damage, all past, present, and future, including harm impacting future job prospects

WHEREFORE, Plaintiff requests judgment against this Defendant for compensatory, exemplary, and punitive damages in an amount as Plaintiff shows himself to be entitled.

## VII – SLANDER
(As to Defendant Chief Brown)

88.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

89.    Defendant Chief Brown orally published false and defamatory statements about Plaintiff, Mason Woods, to a news outlet. These statements were republished by the news outlet and other various media, social media, and online sources, proliferating across the internet and garnering tens of thousands of views.

90.    Defendant Chief Brown's orally published statement was:

a.  "We have a very transient population, and over the last month, starting with **welcome week**, we have had a disproportionate number of **minorities** come into the community and **commit crimes**, and as police officers we are simply responding to those crimes."

91.    Defendant Chief Brown published this statement to a news outlet while discussing the conduct of her officers during Welcome Week and during the incident on August 24, 2025, when Plaintiff Mason Woods was viciously pepper sprayed, wrongfully arrested, denied medical treatment, and thrown in a jail cell for hours

until the East Lansing Police belatedly realized he was unconscious and needed medical attention.

92.    Upon information and belief, Defendant Chief Brown knowingly and recklessly published this false statement, suggesting that Plaintiff Mason Woods was a part of a "disproportionate number of minorities" who "came into the community" during "welcome week" to "commit crimes."

93.    As a direct and proximate cause of Defendant's slander, Plaintiff Mason Woods has suffered the following damages

   a.  Pain and suffering, past, present and future;

   b.  Severe emotional distress;

   c.  Humiliation, embarrassment and mental anguish.

   d.  Reputational damages, all past, present, and future, including harm impacting future job prospects

WHEREFORE, Plaintiff requests judgment against this Defendant for compensatory, exemplary, and punitive damages in an amount as Plaintiff shows himself to be entitled.

### COUNT VIII – Common Law Battery
(As to Defendant Officer Andrew Lyon)

94.    Plaintiff, by reference, incorporates the preceding paragraphs as though fully set forth herein.

95.    At all times relevant, Defendant Officer Lyon was acting under color of state law and within the course and scope of his employment as a police officer for Defendant City of East Lansing.

96.    On or about August 24, 2025, Defendant Officer Lyon intentionally made physical contact with Plaintiff by unleashing pepper spray less than six inches from Plaintiff's face and spraying him directly in the eyes without any warning, and then wrongfully arresting Plaintiff.

97.    Defendant's contact was intentional, harmful, and offensive, and was not consented to by Plaintiff.

98.    Defendant Officer Lyon's conduct constituted a battery under the common law of the State of Michigan.

99.    The use of force and chemical spray by Defendant Officer Lyon exceeded that which was reasonably necessary under the circumstances and was therefore unjustified under Michigan law.

100.    As a direct and proximate result of Defendant Officer Lyon's unlawful batter, Plaintiff suffered:

   a.  Physical pain and bodily injury;

   b.  Emotional distress, humiliation, and mental anguish;

   c.  Loss of liberty and violation of personal security; and

   d.  Medical expenses and other economic and noneconomic damages.

e.  Reputational damages, all past, present, and future.

WHEREFORE, Plaintiff requests judgment against this Defendant for compensatory, exemplary, and punitive damages in an amount as Plaintiff shows himself to be entitled.

Respectfully submitted,

*/s/ Jack Rucker*
Jack W. Rucker (P86386)
Attorney for Plaintiff
**Nova Law, PLC**
428 W. Lenawee Street
Lansing, MI 48933
(517) 885-2000
jack@novalawplc.com

Dated: November 6, 2025

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury in the within encaptioned case.

Respectfully submitted,

*/s/ Jack Rucker*
Jack W. Rucker (P86386)
Attorney for Plaintiff
**Nova Law, PLC**
428 W. Lenawee Street
Lansing, MI 48933
(517) 885-2000
jack@novalawplc.com

Dated: November 6, 2025